AO 91 (Rev. 5/85) Criminal Complaint

1 
pom

# United States District Court

WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

V.

JAMES MULLEN
JEFFREY MULLEN

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: 05 20 1M

CR 05-163

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about May 11, 2005 in Allegheny county, in the Western District of Pennsylvania:

COUNT ONE

Defendant JEFFREY MULLEN did knowingly, intentionally, and unlawfully, possess with intent to distribute and distribute less than 50 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21 United States Code, Sections 841(a) and (b)(1)(C) .

COUNT TWO

Defendant JAMES MULLEN did knowingly, intentionally, and unlawfully, possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21 United States Code, Sections 841(a) and (b)(1)(B)(viii) .

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No
See attached affidavit.

Signature of Complainant

Sworn to before me and subscribed in my presence,

May 12, 2005 at Pittsburgh, Pennsylvania
Date City and State

Robert C. Mitchell, U.S. Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Magistrate No.

## AFFIDAVIT FOR CRIMINAL COMPLAINT

I, Andrew J. Petyak, being duly sworn, depose, and say:

1. I am a Special Agent with the Drug Enforcement Administration, Pittsburgh District Office, and have been so for the past 18 years

2. I currently coordinate the DEA'S Clandestine Lab Response Team. In that capacity I am involved in state and federal Clandestine Lab Investigations. I have received specialized training in investigating, identifying, and dismantling clandestine laboratories. I have participated in the investigation and prosecution of hundreds of traffickers involved in the manufacture and distribution of controlled substances.

3. This Affidavit is submitted in support of a criminal complaint charging JEFFREY MULLEN (DOB 5/15/65) and JAMES MULLEN (DOB 5/4/62) with distribution and possession with intent to distribute methamphetamine, a Schedule II controlled substance.

4. As explained below, there is probable cause to believe that, in the Western District of Pennsylvania and elsewhere, JEFFREY MULLEN and JAMES MULLEN have distributed and possessed with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). Specifically, JAMES MULLEN possessed with intent to distribute in excess of 50 grams of methamphetamine.

5. In early February 2005, I met with a confidential informant (CI), herein referred to as CS-1. CS-1 has provided accurate information to the Allegheny County District Attorney's Office and the Drug Enforcement Administration within the last ninety days.

6. CS-1 provided information that a white male named Jeffrey MULLEN was trafficking methamphetamine in and around the Fayette County area of Pennsylvania. CS-1 stated that CS-1 has purchased methamphetamine from Jeffrey MULLEN in the past and provided the phone number (724) 439-8429 to reach Jeffrey MULLEN. CS-1 states that Jeffrey MULLEN charges one hundred dollars per gram of methamphetamine

7. A query of phone records shows that 724-439-8429 is a phone number registered to Jeffrey MULLEN at 47C Charles Street, Uniontown, PA. A criminal records check indicates that Jeffrey MULLEN has had two prior narcotic arrests and three prior robbery arrests in the State of California.

8. On two occasions in March 2005, March 23, 2005, and March 29, 2005, I and other Agents/Officers met with CS-1 to arrange for the purchase of methamphetamine from Jeffrey MULLEN. On both occasions, CS-1 phoned Jeffrey Mullen at 724-439-8429. On both occasions Jeffrey MULLEN agreed to deliver methamphetamine to CS-1 at an established time and location.

9. Prior to these phone calls, Agents/Officers conducted surveillance of Charles Street and noted that Jeffrey MULLEN'S vehicle was parked in front of 47 Charles Street. Surveillance units observed Jeffrey MULLEN emerge from the steps marked "47C" and enter the vehicle. On both occasions, surveillance units followed Jeffrey MULLEN to a second address located at 63 Nutt Street, Uniontown PA. On both occasions, Jeffrey MULLEN entered 63 Nutt Street and stayed only a few minutes. On both occasions, surveillance units then followed Jeffrey MULLEN to the pre-arranged locations where Jeffrey MULLEN was to meet with CS-1. Jeffrey Mullen was driving his 1988 Mercury Marquis, PA registration "EBY-5137" on both occasions.

10. On both occasions, prior to meeting with Jeffrey MULLEN, CS-1 was searched for any money, contraband, or weapons. These searches were conducted before and after each of the methamphetamine purchases. The vehicle that CS-1 was transported in was also searched prior to and after each of the methamphetamine purchases. Once CS-1 was searched, a quantity of Official U.S. Funds was given to CS-1 for the purchase of the methamphetamine. On both occasions that CS-1 purchased methamphetamine from Jeffrey MULLEN, CS-1 was under constant surveillance from the time that CS-1 was initially searched, during the transportation to and from the meeting site, during the actual purchase, and up until the time that the post-buy search was conducted

11. The methamphetamine that was purchased during March 2005 was labeled as evidence and sent to the DEA'S North East Regional Lab for testing. Both of these purchases were analyzed and found to contain .97 net weight and 1.9 gram net weight quantities of methamphetamine HCL, a schedule II controlled substance.

12. A query of records was conducted to establish the owner/residents of 63 Nutt Street, Uniontown, PA. Information received from these inquiries revealed that this house is owned by Colleen CONN, aka Colleen MULLEN. Records also show that James MULLEN, the brother of Jeffrey MULLEN lives at 63 Nutt Street. Photographs were obtained of both Colleen and James MULLEN, and during the course of this investigation, both Colleen and James MULLEN were observed by surveillance at 63 Nutt Street.

13. During April 2005, an additional quantity of methamphetamine was purchased by CS-1 from Jeffrey MULLEN. This purchase was made in the same manner as described above. Surveillance again revealed that Jeffrey MULLEN left 47C Charles Street and drove to and entered 63 Nutt Street prior to delivering the methamphetamine to CS-1.

14. During the week of May 9, 2005, CS-1 had a conversation with Jeffrey Mullen while Jeffrey Mullen was at the home of his brother, James Mullen, at 63 Nutt Street. During this conversation, CS-1 asked Jeffrey MULLEN about specific quantities of methamphetamine that CS-1 could purchase for various amounts of money. Jeffrey MULLEN told CS-1 that he (MULLEN) would have to check and that he (MULLEN) would call CS-1 back in a few minutes

15. A few minutes later, Jeffrey MULLEN did call CS-1, from 63 Nutt Street, (724) 438-8307, and provided CS-1 with quantity and pricing information that Jeffrey MULLEN would be able to sell to CS-1. During this conversation, Jeffrey MULLEN referred to his brother (James MULLEN) as being his source of supply. Arrangements were made for another purchase of methamphetamine.

16. A records check for 724-438-8307 indicates that this number is the listed phone number for 63 Nutt Street, subscribed to by Colleen Conn, aka Colleen Mullen.

17. On May 11, 2005, pursuant to the on-going investigation and surveillance by law enforcement, Jeffrey MULLEN was stopped in a car on his way to meet CS-1 for another pre-arranged drug transaction. In his pocket, MULLEN was found to possess methamphetamine, wrapped in a plastic baggie, further wrapped up with paper. Per arrangement, the approximate net weight of the methamphetamine was 6 grams. The price was to be $500.00.

18. Also on May 11, 2005, a search pursuant to a federal search warrant issued for 63 Nutt Street resulted in the seizure of

approximately 5.5 ounces of methamphetamine (155.925 grams) from JAMES MULLEN's bedroom. Several thousand dollars in cash, scales, packaging material, three handguns (two of them were loaded) and a rifle were also found in the same bedroom.

19. Based on the foregoing, and on my training and experience, I respectfully submit that there is probable cause to believe that JEFFREY MULLEN and JAMES MULLEN have distributed and possessed with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 18, United States Code, Section 841(b)(1)(C) (JEFFREY MULLEN) and 841(b)(1)(B)(viii)(JAMES MULLEN).

The foregoing information is true and correct to the best of my knowledge, information and belief.

ANDREW J. PETYAK
Special Agent DEA Pittsburgh

Sworn and subscribed to before me
This 12 day of May, 2005

ROBERT C. MITCHELL
United States Magistrate Judge